IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MARY EVELYN MUSKETT,** )<br> )<br>    Plaintiff, )<br> )<br>vs. )<br> )<br>**BELLSOUTH TELECOMMUNICATIONS,** )<br>**INC., and KEMPER NATIONAL SERVICES,**)<br> )<br>    Defendants. ) | CIVIL ACTION NUMBER<br>**CV-99-C-2796-S** |

**MEMORANDUM OPINION**

Plaintiff Mary Evelyn Muskett ("Muskett") filed this action against Defendants BellSouth Telecommunications, Inc. ("BellSouth") and Kemper National Services ("Kemper"), alleging wrongful denial of disability benefits in violation of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). Presently pending before this Court is Defendants' Motion for Summary Judgment. Upon consideration of the pleadings, briefs, and evidentary submissions, the Court concludes that Defendants' motion is due to be **GRANTED**.

### I. Factual Background

Plaintiff Mary Muskett was employed by BellSouth as a Frame Attendant for more than thirty-nine (39) years. During that time, she was receiving treatment from a psychiatrist, Ann

1

Groover, M.D. and a psychologist Robert Summerlin, PhD. for major depressive disorder. Muskett's condition worsened in January of 1996. Based on the advice of Brenda Tesnow, an employee assistance counselor for BellSouth, Muskett received outpatient care at Brookwood Medical Center for six weeks, which began in January 1996.

Despite ongoing treatment, Muskett's condition continued to worsen in 1997. The deterioration in Muskett's condition was a result of the hostile work environment to which Muskett was subjected at BellSouth. Specifically, Muskett was harassed by her supervisor, Sandra Snow ("Snow"), and co-worker Mary Letlow ("Letlow"). When Muskett requested that she not be required to work with Snow and Letlow, BellSouth transferred Muskett from her workgroup in Birmingham to a different workgroup in Anniston, Alabama-a location closer to Muskett's home.

In August 1997, the needs of the workgroups changed, and BellSouth informed Muskett that she was to begin reporting to Birmingham again. Both Dr. Groover and Dr. Summerlin advised Plaintiff not to return to her work environment with Snow and Letlow. Muskett reported that she was sick and unable to return to work, and applied for short-term benefits ("STD benefits") under BellSouth's STD benefits plan (the "Plan"). Kemper, the administrator of the plan, approved Muskett's claim and Muskett began receiving STD benefits.

2

On September 19, 1997, after receiving benefits for approximately two weeks, Muskett was informed by Kemper that she was to return to work and that her STD benefits would cease that day. However, after receiving some additional information from Plaintiff, Kemper reinstated Muskett's benefits. On October 6, 1997, Kemper informed Plaintiff that she no longer qualified for STD benefits as of September 26, 1997 "due to the lack of information to support disability per BST plan design." Kemper stated that the only restriction that Plaintiff's doctors imposed was that she was not to work at the Anniston location. As such, Plaintiff was not unable to do "any type of work" as required for receipt of benefits under the Plan. On October 16, 1997, Kemper called Plaintiff and informed her that she was required to return to work.

Muskett did not return to work in Birmingham. After a short period of time, Arla Hollingsworth ("Hollingsworth"), a human resources manager for BellSouth, contacted Muskett and suggested that Muskett retire. Muskett explained that she did not want to retire before vesting under the new contract that provided for better retirement benefits. BellSouth threatened to fire Muskett if she would neither retire or return to work. Muskett continued to refuse to comply and was terminated on January 12, 1998 when she received a letter from Hollingsworth with a retirement form attached.

3

In her complaint, Muskett alleges that BellSouth and Kemper violated section 502(a)(1)(B) of ERISA by wrongfully denying her STD benefits. Though she additionally argues in her motion for summary judgment that Defendants also violated ERISA Sections 510 and 502, Plaintiff has not plead said violations in her complaint and this Court may not consider the merits of these claims.

## II. Legal Standard

The United States Supreme Court has held that if a benefits plan gives the plan administrator or fiduciary discretionary authority to determine the eligibility for benefits and to construe the terms of the plan, a court reviewing a denial of benefits challenged under section 502(a)(1)(B) of ERISA should apply an abuse of discretion standard. Firestone Tire & Rubber Co. v. Burch, 489 U.S. 101 (1989). See also Guy v. Southeastern Iron Workers' Welfare Fund, 877 F. 2d 37, 38 (11th Cir. 1989); Jett v. Blue Cross & Blue Shield, Inc., 890 F. 2d 1137, 1138 (11th Cir. 1989). Accordingly, a defendant in an ERISA action is entitled to judgement as a matter of law under Fed. R. Civ. P. 56(b) when a plaintiff fails to establish that there is some genuine issue of material fact upon which a trier of fact could conclude that the plan administrator acted arbitrarily or capriousiosly in determining the plaintiff's entitlement to benefits. Griffis v. Delta Family-CAre Disability & Survivorship

Plan, 723 F. 2d 822, 825 (11th Cir., 1984) (granting the plan administrator's motion for summary judgement.

Under Firestone, Kemper's decision to deny benefits to Plaintiff must be examined under the arbitrary and capricious standard. The undisputed facts show that under the Plan Kemper has the discretionary authority to determine eligibility for benefits and interpret the terms of the Plan. The Plan documents specifically provide:

> Kemper is the named fiduciary under the plan with complete authority to review all denied claims for benefits in exercising such fiduciary responsibilities. Kemper shall have discretionary authority to determine whether or to what extent participants are eligible for benefits and to construe disputed or doubtful plan terms. Kemper shall be deemed to have properly exercised such authority unless they have abused their discretion hereunder by acting arbitrarily and capriciously.

Bellsouth Short-Term Disability Plan, Summary Plan Description, Defendants' Ex. B, p. 7. Using the arbitrary and capricious standard, the court must determine whether Kemper had a reasonable basis for its decision to terminate Plaintiff's benefits based upon the facts known to Kemper at the time the decision was made. See Jett v. Blue Cross and Blue Shield of Alabama, 890 F.2d 1137, 1139 (11th Cir. 1989).

### III. Analysis

The Court has carefully reviewed all the evidence and it concludes that there was a reasonable basis for Kemper to deny

5

Muskett benefits under the Plan. There was evidence - the physician's reports of Dr. Groover and Dr. Summerlin - sufficient to support a reasonable conclusion that Plaintiff was not disabled under the terms of the STD plan.

The STD plan and its corresponding summary plan description provide a specific definition of disability, which must be met before STD benefits are provided to employees. According to the express terms of the Plan:

> Disability means a medical condition which makes a particular participant unable to perform any type of work as a result of a physical or mental illness or accidental injury.
>
> Any type of work includes the participant's regular job with or without accommodations, any other participating company job (regardless of the availability) with or without accommodations, or temporary modified duties.

BellSouth Short Term Disability Plan, Holland Dep., Defendants' Ex. 1 thereto, p. 2).

On September 11, 1997, Muskett's treating doctors, Dr. Groover and Dr. Summerlin, submitted reports in support of Muskett's claim for benefits. Both doctors indicated that Muskett <u>could</u> return to work as long as Muskett not work near Snow or Letlow. Thus, even the opinions of Plaintiff's own treating physicians support Kemper's finding that Plaintiff was not disabled under the terms of the STD plan.

Since the medical records available to Kemper on December 17, 1997, the date Kemper denied Plaintiff's claim, indicated

6

Plaintiff was not disabled, Kemper's decision was entirely reasonable and must be upheld.

By separate order Defendants' motion for summary judgment will therefore be granted.

Done this 26th day of March, 2002.

                                    Chief United States District Judge
                                          U.W. Clemon